**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN COLLEGE OF EMERGENCY PHYSICIANS,

    Plaintiff,

  v.

THOMAS E. PRICE, M.D., *et al.*,

    Defendants.

Civil Action No. 16-913 (CKK)

---

**MEMORANDUM OPINION**
(August 31, 2017)

At the center of this case is a rule that sets forth how much insurers are required to pay out-of-network physicians for emergency health care services. Prior to this rule being finalized by the Departments of Health and Human Services, Labor and the Treasury ("the Departments"), Plaintiff and other groups submitted comments to the Departments expressing their concerns about the rule—for example, that the methods it used to set payments were not transparent and could be manipulated by insurers. Many of these commenters proposed using a transparent database to set payments instead. The Departments all but ignored these comments and proposals.

Although the subject matter of the parties' dispute in this case is complex, the Court's obligation under the Administrative Procedure Act ("APA") is simple. The Court must remand this case to the Departments for further explanation of their rule. Accordingly, upon consideration of the pleadings,[1] the relevant legal authorities, and the record for the purposes of

---

[1] The Court's analysis has focused on the following documents:
- Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 14;
- Defs.' Cross-Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Cross-Mot."), ECF Nos. 15, 16;

1

the pending motions, the Court will GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE Plaintiff's [14] Motion for Summary Judgment, DENY WITHOUT PREJUDICE Defendants' [15] Cross-Motion for Summary Judgment, and REMAND this matter to the Departments.

## I. BACKGROUND

A brief explanation of the statutory background is necessary to place the parties' dispute in context. The Emergency Medical Treatment and Labor Act ("EMTALA") requires hospitals with emergency departments to "provide for an appropriate medical screening examination" for any individual who comes to their emergency department if "a request is made on the individual's behalf for examination or treatment for a medical condition." 42 U.S.C. § 1395dd(a). If the hospital determines that the individual has an emergency medical condition, it must provide, within its capabilities, "for such further medical examination and such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility . . ." *Id.* § 1395dd(b).

The subject of this lawsuit is how insurers pay physicians for the emergency services EMTALA requires them to provide. In the midst of an emergency, individuals are often not able to choose which hospital or doctor to go to on the basis of whether they are in their insurer's network. The Patient Protection and Affordable Care Act ("ACA") contains a provision entitled "Patient Protections" which states that "[i]f a group health plan, or a health insurance issuer offering group or individual health insurance [coverage], provides or covers any benefits with

- Pl.'s Reply in Support of Mot. for Summ. J. and Opp'n to Defs.' Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF Nos. 19, 20; and
- Defs.' Reply in Support of Cross-Mot. for Summ. J. ("Defs.' Reply"), ECF No. 21.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

respect to services in an emergency department of a hospital," and such services are provided to a participant, beneficiary or enrollee by an "out-of-network" provider, the "cost-sharing requirement (expressed as a copayment amount or coinsurance rate) [must be] the same requirement that would apply if such services were provided in-network." 42 U.S.C. § 300gg-19a(b). In other words, the ACA requires that insured individuals who need emergency medical treatment not be charged higher copayment or coinsurance rates for that treatment simply because they happened to be treated by a provider who was not in their insurer's network.

On June 28, 2010, the Departments published an Interim Final Rule entitled "Patient Protection and Affordable Care Act: Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, and Patient Protections." AR0001-55 (75 Fed. Reg. 37,188). Part of that Interim Final Rule dealt with the emergency services provisions of the ACA described above. The Departments explained that, despite the protection provided to patients by the ACA's requirement that the copayment or coinsurance rate for out-of-network services be no greater than the rate for in-network services, patients who were treated by out-of-network providers during emergencies were still at financial risk because those providers could, in many states, still "balance bill patients for the difference between the providers' charges and the amount collected from the plan or issuer and from the patient in the form of a copayment or coinsurance amount." AR0008. The Departments concluded that "[i]t would defeat the purpose of the protections in the statute if a plan or issuer paid an unreasonably low amount to a provider, even while limiting the coinsurance or copayment associated with that amount to in-network amounts," because this would still lead to unreasonably high amounts being charged to the patient in the form of "balance billing." *Id.* Accordingly, the Departments stated that "it [was] necessary that a

3

reasonable amount be paid before a patient becomes responsible for a balance billing amount."
*Id.*

In order to ensure that a "reasonable amount be paid for services by some objective standard," the Interim Final Rule established that "a plan or issuer satisfies the copayment and coinsurance limitations in the statute if it provides benefits for out-of-network emergency services in an amount equal to the greatest of three possible amounts—(1) The amount negotiated with in-network providers for the emergency service furnished; (2) The amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the usual, customary, and reasonable charges) but substituting the in-network cost-sharing provisions for the out-of-network cost-sharing provisions; or (3) The amount that would be paid under Medicare for the emergency service." *Id.* This is referred to as the "Greatest of Three" or "GOT" regulation because it sets the amount insurers are required to pay for out-of-network emergency medical services at the greatest of the three listed amounts.

During the comment period for this interim rule, some praised the GOT regulation and others expressed concerns. Among other things, Plaintiff commented that it was concerned about the second prong of the GOT regulation to the extent it referenced "usual, customary, and reasonable" ("UCR") charges or rates as a possible method for calculating payment. AR0082. It noted that the manner in which UCR rates are calculated by insurers is often not transparent and may be inaccurate. *Id.* Plaintiff suggested that an independent database, such as one then being created by an entity called FAIR Health, could potentially be used to determine how much

insurers should pay emergency physicians. *Id.*[2] Other groups, such as Advocacy for Patients with Chronic Illness, Inc. and Lybba (AR0061-62), the Emergency Department Practice Management Association (AR0129-32), the American Medical Association (AR0224-30), the American Hospital Association (AR0351-53), the Texas Medical Association (AR494-503), the Healthcare Association of New York State (AR0538-40), and the California Chapter of the American College of Emergency Physicians (AR0545-48), all submitted similar comments expressing their concern about the lack of transparency and potential for manipulation of rates under the GOT regulation. Many referenced the FAIR Health database as a potential alternative solution.

On November 18, 2015, the Departments issued the final version of the rule. AR0679-782 (80 Fed. Reg. 72,192). The Final Rule adopted the GOT regulation without substantive revision. In response to the comments described above, the Departments simply stated:

> Some commenters expressed concern about the level of payment for out-of-network emergency services and urged the Departments to require plans and issuers to use a transparent database to determine out-of-network amounts. The Departments believe that this concern is addressed by our requirement that the amount be the greatest of the three amounts specified in [the GOT regulation].

AR0701.

Dissatisfied with the Departments' response to its concerns, Plaintiff filed this lawsuit. Plaintiff alleges that the Final Rule "is invalid because it does not ensure a reasonable payment for out-of-network emergency services as required by statute, and [because] the Departments did

---

[2] Defendants note in their briefing that Plaintiff submitted additional materials to the Departments on these issues after the comment period for the Interim Final Rule closed. Defs.' Cross-Mot. at 14. Defendants state that, "out of an abundance of caution," these submissions were included in the Administrative Record. *Id.* The Court has considered, as it must in a suit brought under the APA, all of the records that were included in the Administrative Record that was certified by Defendants.

5

not respond meaningfully to [Plaintiff's] concerns about the serious deficiencies of the regulation." Compl., ECF No. 1 at ¶ 1. Specifically, with regard to the Department's allegedly deficient response, Plaintiff states that the Departments "failed to respond meaningfully to [Plaintiff's] concern that insurers should be required to use a transparent database to determine out-of-network UCR payments to emergency physicians." *Id.* ¶ 50. Now pending before the Court are the parties' fully-briefed cross-motions for summary judgment.

## II.  LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138

(D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). However, an agency is still required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

## III. DISCUSSION

The Court agrees with Plaintiff that the Departments acted arbitrarily and capriciously by failing to seriously respond to comments and proposed alternatives submitted by Plaintiff and others regarding perceived problems with the GOT regulation. Although an agency "need not address every comment" made during the notice and comment period, "it must respond in a reasoned manner to those that raise significant problems." *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003) (quoting *Reytblatt v. Nuclear Regulatory Comm'n*, 105 F.3d 715, 722 (D.C. Cir. 1997)). While it is true that "[a]n agency's obligation to respond . . . is not 'particularly demanding,'" *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) (quoting *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)), the agency's response to public comments must at least "enable [the Court] to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did," *Auto. Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C. Cir. 1968). With respect to proposed alternatives in particular, "[a]n agency is required 'to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives.'" *Am.*

7

*Radio Relay League, Inc. v. F.C.C.*, 524 F.3d 227, 242 (D.C. Cir. 2008) (quoting *City of Brookings Mun. Tel. Co. v. F.C.C.*, 822 F.2d 1153, 1169 (D.C. Cir. 1987)).

The Departments' response in this case does not satisfy these standards. In response to numerous comments raising specific concerns about the methods used in the GOT regulation for determining the amount insurers would be required to pay for out-of-network emergency medical services—*e.g.*, the rates' lack of transparency or their vulnerability to manipulation—the Departments simply stated that these concerns were "addressed by our requirement that the amount be the greatest of the three amounts specified." AR0701. In other words, instead of engaging with any of the specific perceived problems commentators raised about the rates referenced in the GOT regulation—especially the UCR rates—the Departments' response was that "in circumstances where there may be concerns with any one of" the possible rates, "the others can pick up the load." Defs.' Mot. at 24.

This answer does not seriously respond to the actual concerns raised about the particular rates, and it ignores altogether the proposed alternative of using a database to set payment.[3] This failure to respond was arbitrary and capricious. The Court will accordingly remand this case to the Departments to provide further response to these comments and explanation of their Final Rule. *See Sierra Club v. Envtl. Prot. Agency*, 863 F.3d 834, 838-39 (D.C. Cir. 2017) (remanding to agency for further explanation because it "failed to respond adequately to comments" that agency argued were outside the scope of its determination); *Lilliputian Sys., Inc. v. Pipeline &*

---

[3] The parties each accuse the other of improperly relying on extra-record evidence in their summary judgment briefing. The Court has not considered the extra-record materials relied on by either party as substantive evidence regarding the merits of this case. "When reviewing agency actions under the APA, the Court's review is limited to the administrative record." *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 155 (D.D.C. 2012); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

*Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1313-14 (D.C. Cir. 2014) (remanding to agency for further explanation because brief "opaque statement" was insufficient response to concern raised by plaintiff); *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94 (D.C. Cir. 2010) (remanding to agency for further explanation because it "did not resolve the[ ] commentators' objections" or, at best, "attempt[ed] to address them in a conclusory manner").

To be sure, Defendants have now voiced in their summary judgment briefing numerous reasons why the Departments did not change the GOT regulation in response to the comments underlying Plaintiff's complaint. For example, Defendants state that "as noted in defendants' opening brief and [reply,] plaintiff's transparency concerns are . . . met by the requirements that plans and issuers explain in appeals of benefits how the benefits were calculated." Defs.' Reply at 4-5, 14. Defendants argue that the calculation of UCR rates need not be regulated in the way Plaintiff suggested because other sources of law apply. Defs.' Cross-Mot. at 13-4; Defs.' Reply at 12-13. They claim that Plaintiff did not sufficiently demonstrate the factual premises underlying its comments—*e.g.*, that the GOT regulation has caused a drop in insurer payments to emergency physicians, that emergency health care providers are in a vulnerable bargaining position in relation to insurers, or that insurers have manipulated UCR rates in the past. Defs.' Cross-Mot. at 9-16; Defs.' Reply at 2-4, 6-11. Defendants also argue that the Departments reasonably concluded that dictating the manner by which UCR rates must be calculated, or requiring the use of a database for that purpose, was outside of their statutory mandate and would only have been relevant to a "different and further type of rulemaking on which the Departments were not embarked." Defs.' Cross-Mot. at 18; Defs.' Reply at 2-5, 6-11. Defendants contend that "an agency need not solve every problem before it in the same proceeding." Defs.' Reply at

11-12 (quoting *Mobil Oil Expl. & Producing Se. Inc. v. United Distribution Companies*, 498 U.S. 211, 231 (1991)). Finally, Defendants argue that the use of a database to set rates might be inappropriate to the extent it forced insurers or physicians to share information on wages or prices, because this could raise a "serious competitive concern." Defs.' Cross-Mot. at 25 n.12.

These reasons may very well be more than sufficient to support the Departments' decision to finalize the GOT regulation in spite of the concerns raised by Plaintiff and others. The Court passes no judgment on that issue at this time. However, these explanations were not offered during the administrative rule making process, and it is black letter law that "when an agency had an obligation to explain its action contemporaneously with the action, *post-hoc* rationalizations of counsel may not be relied upon by a reviewing court." *Women Involved in Farm Econ. v. U.S. Dep't of Agric.*, 876 F.2d 994, 998-99 (D.C. Cir. 1989) (agency counsel is prevented from "proffering alternative theories—not explicitly embraced by a department or agency head—to support a challenged regulation").

Additionally, the Court is also not persuaded by Defendants' argument that, to the extent the Departments "ignored" Plaintiff's comments, they were "entirely justified in doing so" because those comments were "not significant." Defs.' Cross-Mot. at 28-29. Agencies must respond to comments that "raise points relevant to the agency's decision and . . . if adopted, would require a change in an agency's proposed rule.'" *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 333 (D.D.C. 2016) (quoting *City of Portland, Oregon v. E.P.A.*, 507 F.3d 706, 715 (D.C. Cir. 2007)). Both of these requirements were satisfied by the comments at issue. The comments raised perceived problems with the GOT regulation that, if legitimate, could prevent the regulation from accomplishing the Departments' stated goal of ensuring that providers are paid a reasonable amount for their services. The comments were at least "relevant" to the Departments'

decision because the Departments themselves recognized that if the GOT regulation failed to ensure such reasonable payment, "[i]t would *defeat the purpose of the protections in the statute*." AR0008 (emphasis added). Moreover, if accepted, Plaintiff's comments and others like them would have required changes to the agency's proposed rule, in that the comments called for modifications to the manner in which payments from insurers to out-of-network emergency physicians were to be calculated. Accordingly, the comments were "significant" and required a response.

The Court's holding today is a narrow one—it relates only to the sufficiency of the Departments' response to comments and proposed alternatives. The Court will remand this matter to the Departments so that they can adequately address the comments and proposals at issue. The Court will not vacate the rule pending this further explanation. "As the Supreme Court has instructed . . . where 'the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)). Because the Court remands for further explanation of the rule, it does not yet reach Plaintiff's separate arguments regarding the rule's perceived substantive shortcomings—*i.e.*, that the rule violates the APA because it "does not fulfill the statutory requirement of a reasonable, objective payment for out-of-network emergency services." Pl.'s Mot. at 1-2. On remand, the Departments are free to exercise their discretion to supplement the explanation of the Final Rule as they deem appropriate and to reach the same or different ultimate conclusions. At a minimum, however, the Departments are required to respond to Plaintiff's comments and proposals in a reasoned

manner that "enable[s] [the Court] to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did." *Boyd*, 407 F.2d at 338.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART WITHOUT PREJUDICE Plaintiff's [14] Motion for Summary Judgment, REMANDS this case to the Departments for further explanation of the Final Rule, and DENIES WITHOUT PREJUDICE Defendants' [15] Cross-Motion for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge